IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| HAROLD J. MCGURL, JR., | ) Civil Action No. 2:23-CV-01584-CBB |
| Plaintiff, | ) |
| vs. | ) United States Magistrate Judge |
|  | ) Christopher B. Brown |
| CORRECTIONS OFFICER D. COSTELLO, CORRECTIONS OFFICER R. OHLER, | ) |
| Defendants, | ) |

**MEMORANDUM OPINION**[1]
**ON MOTION FOR SUMMARY JUDGMENT ECF No. 92**

**I.   Introduction**

Plaintiff Harold J. McGurl, Jr. ("McGurl"), proceeding pro se and in forma pauperis, initiated this 42 U.S.C. § 1983 civil action.  McGurl is currently incarcerated at SCI-Phoenix, but the events giving rise to this action occurred at SCI-Fayette.  ECF No. 27.  McGurl brings an Eighth Amendment failure to protect claim under 42 U.S.C. § 1983 against Defendants Costello and Ohler, both Corrections Officers at SCI-Fayette.  This court has subject matter jurisdiction under 28 U.S.C. § 1331.

---

[1]   All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 92. Notably, McGurl filed an Opposition to Defendants' Motion for Summary Judgment, ECF No. 96, but did not file either an Affirmative or Responsive Statement of Facts. The Motion is fully briefed and ripe for consideration. ECF Nos. 92-96, 98, 104.

For the reasons below, Defendants' Motion for Summary Judgment is GRANTED. ECF No. 92.

## II. McGurl's Violation of Local Rule 56.C.1

Before addressing the factual background underlying this action, the Court notes that McGurl has failed to properly respond to Defendants' Statement of Material Facts (ECF No. 94), as required by Local Rule 56.C.1. Local Rule 56.C.1 requires non-moving parties to a motion for summary judgment to file a responsive concise statement. LCvR 56.C.1. A plaintiff must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue. *See* LCvR 56.C.1. Courts in this district require strict compliance with the provisions of Local Rule 56. *See, e.g.*, *Byron v. Columbia Gas of Pennsylvania,* No. 2:21-CV-01365-CCW, 2022 WL 17406052, at *1 (W.D. Pa. Dec. 2, 2022), *aff'd*, No. 22-3408, 2023 WL 8663876 (3d Cir. Dec. 15, 2023); *Angelopoulos v. HDR Eng'g, Inc.,* No. 2:19-CV-01578-CCW, 2021 WL 3056205, at *2 (W.D. Pa. July 20, 2021); *First Guard Ins. Co. v. Bloom Services,*

*Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Auth.*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017).

A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E. While courts provide some leniency to pro se litigants when applying procedural rules, the Court "is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may pro se litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

McGurl had actual knowledge of these requirements and was informed by Court Order that statements of material fact "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." ECF No. 89 at 3.

Consequently, the Court will treat Defendants' Statement of Material Facts (ECF No. 94) as undisputed but will nonetheless consider any contradictory facts McGurl asserts if they are properly supported by the record. *Whetstone v. Fraley & Schilling Trucking Co.*, No. 22-cv-1018, 2022 WL 4533847, at *2 (3d Cir. Sep. 28, 2022). *See also Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) ("To the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining" summary judgment).

### III. Background

McGurl filed his initial Complaint on September 12, 2023 and his Amended Complaint on December 27, 2023.  ECF Nos. 6, 27.  In his Amended Complaint, McGurl alleges that another inmate assaulted and injured him while he was in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution ("SCI") at Fayette.  *Id.*  He has since been transferred multiple times and is currently housed at SCI-Phoenix.  ECF Nos. 18, 81.

After the Court's ruling on Defendants' Motion to Dismiss, McGurl's only remaining claim is an Eighth Amendment failure to protect claim against the two remaining Defendants: Corrections Officer D. Costello and Corrections Officer R. Ohler.  ECF No. 43 at 5-9.  McGurl alleges that while at SCI-Fayette, the Defendants knew another inmate threatened McGurl, and despite this knowledge, placed them together in a cell.  ECF No. 27 at 1-2.  The other inmate then attacked McGurl, breaking his ribs and bruising his head.  *Id.*  *See also* ECF No. 6 at 6.

4

Defendants argue they are entitled to summary judgment because McGurl did not exhaust his administrative remedies. It is undisputed McGurl filed a grievance on October 18, 2022 – after his initial grievance was rejected for failure to comply with DC ADM 801[2] – which alleged that even though he had previously told Defendants Costello and Ohler he had been having prior issues with a particular inmate, he was moved to the same cell and then attacked. ECF No. 95-3 at 4.

It is also undisputed that SCI-Fayette initiated an investigation with an Initial Level Extension to have enough time to properly investigate his abuse claims under DC-ADM 001. ECF No. 94 at ¶ 14; ECF No. 95-3 at 5. Then, on May 15, 2023, the SC-Fayette Security Office rejected his grievance in an Initial Review Response,[3] saying that after the investigation into his abuse allegations, the "investigation determined there was no substantial evidence to support [his] allegations against staff." ECF No. 94 at ¶ 15; ECF No. 95-3 at 6.

In their Brief in Support of their Motion for Summary, the Defendants state McGurl did not appeal his rejected grievance to either the Facility Manager or to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). ECF No. 93 at 8; ECF No. 94 at ¶ 16. In one sentence of his Opposition brief, McGurl states he did appeal. ECF No. 96 at 1. He does not provide a copy of this appeal or any other factual support for his statement. *Id.*

---

[2]    McGurl filed an initial grievance on October 17, 2022 where he objected to a misconduct he received and a fight with his cellmate. ECF No. 94 at ¶¶ 9-10; ECF No. 95-3 at 1-2. His grievance was rejected under DC-ADM 801 because his grievance included details about two different events and needed to be presented separately. ECF No. 94 at ¶ 12; ECF No. 95-3 at 3.

[3]    The Parties do not dispute the investigation was timely and in accordance with DC-ADM 001.

5

IV. **Standard of Review**

The standard for assessing motions for summary judgment is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could hold in the nonmovant's favor with respect to that issue. *Id.*

This standard is somewhat relaxed with respect to pro se litigants. *Simmons v. Gilmore*, No. 2:17-CV-00996, 2021 WL 1215773, at *8 (W.D. Pa. Mar. 31, 2021) (citing *Anderson*, 477 U.S. at 256). Where a party is representing himself pro se, the complaint is to be construed liberally. *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set

6

forth specific facts showing that there is a genuine issue for trial."). At the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. *Jones,* 214 F.3d at 407. "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted).

V.   **Discussion**

Defendants move for summary judgment, arguing McGurl did not properly exhaust his administrative remedies on his failure to protect claim. ECF Nos. 93, 98. Defendants do not move on the merits of his claim. ECF No. 93.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As recently explained by the Court of Appeals for the Third Circuit:

> The exhaustion mandate is a "centerpiece" of the statute, *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006), that serves three important statutory goals: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits, *Spruill [v. Gillis]*, 372 F.3d [218,] 230 [3d Cir. 2004]. The PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 92, which means "complet[ing] the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020)

7

> (quoting *Woodford*, 548 U.S. at 88). The only limit on § 1997e(a)'s mandate is that "administrative remedies must be available to the prisoner" as both a formal and practical manner. *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 641-42 (2016)).

*Talley v. Clark*, 111 F.4th 255, 262 (3d Cir. 2024). An administrative remedy is unavailable, and administrative exhaustion is excused, when it "operates as a simple dead end(,) . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey*, 968 F.3d at 305 (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)) (cleaned up). "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Id.* In these situations, "[w]hat is good for the goose is good for the gander," and "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 335, 367.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Spruill v. Gillis*, 372 F.3d 218, 230–31 (3d Cir. 2004) (explaining that "prison grievance procedures supply the yardstick for measuring procedural default."). The procedural requirements for exhaustion in each case "are drawn from the policies of the prison in question rather than from any free-standing federal law." *Shifflett*, 934 F.3d at 364. Proper exhaustion requires full compliance with the prison's deadlines and procedures, and

8

an untimely or procedurally defective grievance or appeal does not satisfy the PLRA and precludes a prisoner from subsequently filing his claims in federal court. *Spruill*, 372 F.3d at 231; *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000).

It is not the plaintiff's burden to demonstrate exhaustion. *Jones*, 549 U.S. at 217 (holding that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). The failure to exhaust must be asserted and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Two Pennsylvania Department of Corrections ("DOC") policies are relevant here, DC-ADM 804,[4] which governs the grievance and appeals process in Pennsylvania correctional institutions, and DC-ADM 001[5] which governs inmates' allegations of abuse. According to DC-ADM 804, "every individual committed to [DOC] custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal." DC-ADM 804 at p.1.

The DC-ADM 804 Inmate Grievance System sets forth three separate stages: First, the prisoner must timely submit a written grievance for review by the facility grievance coordinator using the approved form within fifteen working days of the

---

[4]     *See* DC-ADM 804 Policy Statement, available online at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (effective May 1, 2015) (last visited June 24, 2025).

[5]     *See* DC-ADM 001 Policy Statement, available online at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/001%20Inmate%20Abuse.pdf(effective April 11, 2022) (last visited June 24, 2025).

9

incident, at which time the facility coordinator will assign a tracking number to the grievance and respond within fifteen business days. DC-ADM 804 §§ 1.A, C. The Inmate Grievance System provides that the grievance must include "a statement of facts relevant to the claim" and shall include, *inter alia*, "the date, approximate time, and location of the event(s) that gave rise to the grievance," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violation of Department directives, regulations, court orders, or other law." DC-ADM 804 §1.A.11.

At this first stage, DC-ADM 001 provides an inmate "who is a victim of abuse" an alternative means to report the abuse.[6] First, the inmate can file a grievance exactly as they would under DC-ADM 804, outlined above. *See* DC-ADM 001, Inmate Abuse Policy § IV(D)(2).[7] Alternatively, an inmate can report the abuse verbally or in writing to any staff member, or report it in writing to the Department's Bureau of Investigations and Intelligence. *Id.* at § IV(D)(1)-(3). Once an inmate reports abuse under DC-ADM 001 and receives an Initial Review

---

[6] DC-ADM 001 also provides for certain procedures that must be followed by the facility's Security Office when investigating allegations of abuse, which include preparing an investigative report that is then forwarded to the Office of Special Investigations and Intelligence ("OSII") for review. DC-ADM 001, Inmate Abuse Procedures Manuel § 1(C).

[7] If an inmate elects to report the alleged abuse by filing a grievance in accordance with DC-ADM 804, the allegations of abuse are still handled in accordance with DC-ADM 001's procedures governing investigations. *See* DC-ADM 804 § 1(D)(2) ("A grievance dealing with allegations of abuse shall be handled in accordance with Department policy DC-ADM 001, 'Inmate Abuse.'"); *see also* DC-ADM 001 § 1(B)(2) ("A grievance dealing with the allegations of abuse shall be handled in accordance with this procedures manual"). As a result, the time for responding to an inmate's grievance may be extended, and the Initial Review Response will be completed by the assigned Grievance Officer when the results of the investigation from the Office of Special Investigations and Intelligence ("OSII") are received. DC-ADM 804 § 1(D)(3)&(5); DC-ADM 001 § 1(B)(2). Even so, the extension "will not alter the inmate's ability to appeal upon his/her receipt of the initial review response." *Id.*

Response pursuant to the policy procedures, the inmate must then follow the remaining two steps in the Inmate Grievance System under DC-ADM 804, as it is the "exclusive means of exhaustion." *Prater v. Dep't of Corr.*, 76 F.4th 184, 204 (3d Cir. 2023).

At the second stage in the DC-ADM 804 Inmate Grievance System, the inmate must timely submit a written appeal within fifteen working days from the initial review, and again the inmate will receive a written response thereto within fifteen working days. *Id.* at § 2.A. Lastly, the inmate must submit a timely appeal for final review to SOIGA within fifteen working days, and the inmate will receive a final determination in writing within thirty days thereafter. *Id.* at § 2.B. An inmate appealing a grievance to final review must provide SOIGA with the following documentation: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review response/rejection and/or remanded initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision; and (5) a written appeal to the SOIGA. *Id.* at §§ 2.B.1.j.1-5. DC-ADM 804 further provides that "failure to provide any of the documentation noted above may result in the appeal being dismissed[.]" *Id.* at §2.B.1.j.6.

Defendants argue McGurl did not exhaust his administrative remedies because he never appealed his rejected grievance # 1002478 to either the Facility Manager or to SOIGA. ECF No. 93 at 8. Defendants attached a "Grievance Number 1002478 Packet" to their Motion for Summary Judgment which includes all

11

documents related to grievance 1002478. ECF No. 95-3. In a supplement to the Defendants' Concise Statement of Material Facts, Defendants' also attached the Declaration of Keri Moore, the Chief Grievance Officer at SOIGA, in which she states she reviewed the files of SOIGA, and SOIGA does not have a record of any Inmate Appeal to Final Review of grievance # 1002478. ECF No. 104-1 at ¶¶ 13-14.[8]

As an initial matter, the Parties agree McGurl filed the operative grievance on October 18, 2022. ECF No. 94 at ¶ 13. This grievance, Number 1002478, relayed that even though he had previously told Defendants Costello and Ohler that he had been having prior issues with a particular inmate, he was moved to the same cell as him and then attacked. ECF No. 95-3 at 4. SCI-Fayette then initiated an Initial Level Extension in order to "appropriately investigate and respond to [his] allegations of abuse . . . in accordance with DC ADM 001." ECF No. 95-3 at 5. Then, on May 15, 2023, the SC-Fayette Security Office rejected his grievance via an Initial Review Response, saying that "[s]ince Grievance #1002478 deals with an Abuse allegation, a thorough investigation was conducted by the SCI Fayette

---

[8] On June 3, 2025 and in accordance with Fed. R. Civ. P. 56(e)(1), the Court gave Defendants the opportunity to properly authenticate the grievance packet – which Defendants provided in their initial Motion for Summary Judgment and to which McGurl had the opportunity to respond in his Opposition – via a declaration from someone knowledgeable at the Department of Corrections. ECF No. 103; *see also Katz v. Beebe Healthcare*, No. CV 22-625-WCB, 2025 WL 1207117, at *3 (D. Del. Apr. 24, 2025) (permitting defendants at the summary judgment stage to cure a "technical inadequacy," which did not prejudice the opposing party because the "critical portion [of the record] was already before the court during the proceedings . . . [and the opposing party] was not deprived of an opportunity to respond to that evidence in their reply brief").

12

Security Staff" and that the "investigation determined there was no substantial evidence to support [his] allegations against staff." ECF No. 95-3 at 6

Since McGurl completed the first step of the grievance procedure under DC-ADM 001 and he received an Initial Review Response, McGurl was then required to move to the next two steps in the Inmate Grievance System under DC-ADM 804. *See Prater*, 76 F.4th at 204. However, there is no evidence in the record showing that McGurl appealed to either the Facility Manager or to SOIGA. ECF No. 105-1 at ¶¶ 13-14. *See also* ECF Nos. 95-2 – 95-3. Thus, McGurl failed to exhaust his administrative remedies. *Alexis v. Connors*, No. 23-2502, 2024 WL 3534480, at *4 (3d Cir. July 25, 2024) (finding District Court correctly concluded plaintiff did not exhaust his administrative remedies when his grievance was rejected and he did not appeal its rejection); *Moore v. Lamas*, No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023) (upholding District Court's dismissal for failure to exhaust where plaintiff did not appeal after his grievance was rejected).

In his Opposition brief, McGurl says plainly that he "did appeal" to the Department of Corrections Secretary and "never received a response." ECF No. 96 at 2.[9] He does not attach a copy of the appeal, nor does he include any detail about the appeal – for example, when he sent it or what it said. McGurl further says he does not have a copy of his appeal documents because "no PA DOC inmate is given a

---

[9] In McGurl's refiled Grievance 1002478, he says he "filed write up appeal & sent letter to Mr. Armel, sent appeal to PRC, etc . . ." ECF No. 95-3 at 4. To the extent McGurl is relying on this as evidence of his appeal, this does not create a genuine issue of material fact. He could not appeal a grievance before he filed it.

13

copy of any of the grievance information." *Id.* at 1.[10] The Court further notes, however, that McGurl attached over twenty pages of grievance-related documents to his initial Complaint – none of which were an appeal of the May 15, 2023 Inmate Review Response related to his allegations of abuse in grievance #1002478 – so it does not appear that McGurl was categorically prevented from having copies to his grievance documents. *See* ECF No. 6-1 at 8-26.[11]

Accordingly, there is nothing in the record – either from the documents McGurl attached to his original Complaint, or the documents provided by Defendants – that indicate McGurl appealed the May 15, 2023 Initial Review Response to his grievance #1002478 and satisfied the exhaustion requirements under DC-ADM 804. At the summary judgment stage of the proceedings, the Court "need not credit" McGurl's "bald assertions" that he appealed. *Jones,* 214 F.3d at 407. *See also Miller v. Ricci*, No. CIV.A. 11-0859 FLW, 2013 WL 1987255, at *2 (D.N.J. May 13, 2013), *aff'd* (Nov. 1, 2013) (finding that an "uncorroborated declaration," where plaintiff stated he submitted a complete appeal, "can not serve to create a genuine issue of material fact"); *Simmons v. Lanigan*, No. CV164215, 2021 WL 1712577, at *4 (D.N.J. Apr. 30, 2021) ("[A] plaintiff may not defeat

---

[10] Additionally, on June 17, 2025, McGurl filed a letter he received from John Mizner in January 2025. ECF No. 106 at 1. In the letter, Mizner says that, per DOC policy, he is not permitted to return documents to the prison, but that he can send documents to a loved one for $20.00. *Id.* On the letter, McGurl also wrote for the Court that "Mr. Mizner has all my documents in this case! I can't fight my case, I have none of my [documents]!" *Id.* The Court notes that John Mizner is not counsel of record in this case and that it is not clear if and how he is involved.

[11] It appears McGurl tried to appeal grievance #1002478 on October 26, 2022 and October 27, 2022. *See* ECF No. 6-1 at 15, 23. However, these appeals were while the abuse investigation was ongoing and before McGurl received the May 15, 2023 Inmate Review Response. Accordingly, these documents cannot serve as the proper appeal pursuant to DC-ADM 804 § 2.A.

summary judgment through conclusory, self-serving affidavits which "vaguely insist[ ] that he 'appealed numerous responses' that 'vanished after being properly submitted and/or filed.'") (quoting *Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018). McGurl's one-off statement in his brief does not create a genuine issue of material fact.

McGurl likewise does not provide any evidence that the grievance process was unavailable to him or that he was thwarted from exhausting his remedies. *See generally*, ECF No. 96. He makes a vague argument that "nothing besides what was sent has ever made it off the RHU block at SCI-Fayette," but it is not clear if he is claiming his appeal did not make it off the RHU block. *Id.* at 2. The next sentence in his Opposition undercuts this argument, however, because he says he did successfully appeal but never received a response. *Id.* To the extent McGurl is arguing he was thwarted from filing the appeal, he does not provide any supporting evidence or elaborate on this argument. *See Hatten v. Bledsoe*, 782 F. App'x 91, 96, n.2 (3d Cir. 2019) (finding there was "no basis to find that administrative remedies were unavailable" to a plaintiff because he "presented no evidence that would support a finding that he was thwarted from exhausting any remedy related" to his claim); *Campbell v. Doe*, No. CV 12-2750 (SDW), 2018 WL 4616068, at *4 (D.N.J. Sept. 26, 2018) (finding plaintiff did not provide "facts sufficient to support a finding that his administrative remedies were unavailable" when plaintiff did not include any documentation or testimony showing a "valid basis" for failing to exhaust).

Lastly, McGurl never suggests that Defendants destroyed his grievance forms, threw them away, or threatened him were he to file a grievance. *See e.g.* ECF Nos. 27, 96. As such, the exhaustion and failure to protect questions do not depend on common factual issues warranting a jury trial – instead the issue can be resolved here. *See Perttu v. Richards,* No. 23-1324, 2025 WL 1698783, at *5 (U.S. June 18, 2025) (parties are entitled to a jury trial when the exhaustion issue is intertwined with the merits of a claim).

In the end, since McGurl did not properly exhaust his administrative remedies for grievance # 1002478 prior to filing suit, he cannot pursue his failure to protect claim against Officers Ohler and Costello. Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

## VI.   Conclusion

Therefore, for the reasons set forth herein, the Court finds that no genuine issues of material fact exist, and Defendants' Motion shall be GRANTED. An appropriate Order will be issued. Final Judgment pursuant to Federal Rule of Civil Procedure 58 will be entered by separate Order.

DATED this 24th day of June, 2025.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc:    HAROLD J. McGURL, JR.
NU3310
SCI PHOENIX
1200 MOKYCHIC DRIVE
COLLEGEVILLE, PA 19426
(via U.S. First Class Mail)

All Counsel of Record, *via ECF*